UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NATIONAL ENVIRONMENTAL SERVICES )
CORPORATION,                     )
                                 )
            Plaintiff,           )
                                 )
      vs.                        )    Case No. 4:06CV240-DJS
                                 )
INSURANCE COMPANY OF THE STATE   )
OF PENNSYLVANIA and              )
MB ASSOCIATES LLC,               )
                                 )
            Defendants.          )

## MEMORANDUM AND ORDER

This action involves a complaint filed in interpleader asking for confirmation of an arbitration award. The matters before the Court are: (1) defendant MB Associates' ("MB") motion for the payment of attorney's fees from the interpled funds [Doc. #30]; (2) plaintiff National Environmental Services Corporation's ("NESC") motion for judgment on the pleadings [Doc. #39]; (3) plaintiff NESC's motion for summary judgment as to the defendant Insurance Company of the State of Pennsylvania's ("ICSP") counterclaim [Doc. #56]; and (4) defendant ICSP's motion for summary judgment [Doc. #58].[1]

### I. BACKGROUND

Upon review of all the parties' pleadings, the Court finds that the following material facts are not in dispute. The matters currently before the Court relate to construction services

_____

[1]Also pending before the Court is MB's motion for judgment on the pleadings as to all counts of ICSP's crossclaim [Doc. #80]. That motion is not yet ripe, and will be adjudicated at a later date.

provided for the St. Louis Housing Authority ("SLHA"). The SLHA employed plaintiff NESC to serve as general contractor for the demolition of the Darst-Webbe Housing Project (the "Project"). Subsequently, NESC subcontracted some of the work for the Project to SPIRCO Services, Inc. ("SPIRCO").

On or about July 10, 1997, NESC applied to defendant ICSP for a payment and performance bond on the Project. At the time of its application, NESC executed a General Indemnity Agreement in favor of ICSP, for all bonds provided by ICSP as surety on the Project. On or about November 30, 1998, ICSP, as surety, issued a performance and payment bond in favor of SLHA for the Project, with NESC as principal ("Project Bond").

On or about January 28, 2000, SPIRCO presented to ICSP a claim against the Project Bond in the amount of $512,794.61 — later amended to at least $618,979.18 — for work performed by SPIRCO for which NESC allegedly failed to pay ("SPIRCO Claim"). On November 6, 2002, SPIRCO assigned the SPIRCO Claim to Midwest BankCentre, and on November 5, 2004, Midwest BankCentre assigned the SPIRCO Claim to MB.[2]

On or about November 5, 2004, MB, as an assignee of SPIRCO, filed a demand with the American Arbitration Association for arbitration of the SPIRCO Claim against NESC. The arbitration concluded with an award on December 22, 2005, in favor of MB and against NESC, in the amount of $209,412.39.[3] The award

---

[2]ICSP disputes the validity of these assignments.

[3]ICSP did not participate in these arbitration proceedings.

specifically denied MB's claim for prejudgment interest and attorney's fees and costs.

NESC pleads in its complaint that, following the arbitration, it requested that MB execute a release and indemnification in NESC's favor upon NESC's satisfaction of the award. On or about January 11, 2006, MB rejected NESC's offer of release and indemnification.

In its complaint, NESC alleges that, through a letter dated February 14, 2006, ICSP made a claim on the arbitration award, demanding that NESC pay over to ICSP the $209,412.39 to set-off a separate debt SPIRCO owed to ICSP.[4] Faced with what it believed to be competing claims on the funds awarded in the arbitration, NESC filed the instant complaint in interpleader on

---

[4]On or about March 18, 1997, ICSP issued, on account of SPIRCO as principal, a performance bond with respect to a project — owned by Wellsford Commercial Properties ("Wellsford") — known as the American Cyanamid Asbestos Abatement Project. SPIRCO and ICSP also entered into two other contracts, the first in July 1995 and the second in November 1997, captioned "General Agreements of Indemnity," in favor of ICSP for all bonds provided by ICSP as surety for SPIRCO. A claim was made on the American Cyanamid bond by Wellsford, and on or about July 28, 1998, ICSP demanded that SPIRCO indemnify it as to all liability, loss, costs, expenses, and attorney's fees which it might incur on account of the claim made on the American Cyanamid bond. An arbitration proceeding on the American Cyanamid claim commenced in September 1998, and eventually resulted in a finding of no liability for SPIRCO and for ICSP. However, in defending itself, ICSP incurred attorney's fees, expenses, and costs amounting to $799,476.07. SPIRCO refused ICSP's request that SPIRCO reimburse it for those expenditures, and on December 10, 2004, SPIRCO filed a declaratory action in the Circuit Court of St. Louis County against ICSP, asking that court to determine that SPIRCO was not liable to ICSP on its claim for reimbursement. ICSP removed the action to this Court, and by two memoranda and orders — the first entered on May 9, 2006, and the second entered on January 5, 2007 — Magistrate Judge David D. Noce granted summary judgment in favor of ICSP, and ordered SPIRCO to pay to ICSP the sum of $794,964.38 plus interest. [ See Spirtas Company et al. v. Insurance Company of the State of Pennsylvania, Cause No. 4:05CV100-DDN, Doc. Nos. 91–92, 132–33; see also Spirtas Co. v. Ins. Co. of the State of Penn., 2007 WL 45841 (E.D. Mo. January 5, 2007)].

February 21, 2006. NESC, in its complaint, asks that the Court issue an order confirming the arbitration award as full and final judgment of any claims against NESC by SPIRCO as assigned to Midwest BankCentre and MB, and declaring which party is entitled to the proceeds of the arbitration award.[5]

On May 22, 2006, ICSP filed a counterclaim against NESC seeking a judgment (1) declaring its interest in the arbitration award to be superior to all other claims; and (2) against NESC for all expenditures and outlays made by ICSP on account of the Project and the Project Bond. Further, on May 22, 2006, ISCP filed a crossclaim against MB seeking, among other relief, a judgment in ISCP's favor and against MB with regard to the arbitration award.

NESC filed a motion for judgment on the pleadings on November 20, 2006, claiming it is entitled to judgment on the pleadings as to the appropriateness of its interpleader action and as to both counts of its complaint. On March 28, 2007, NESC filed a motion for summary judgment on ICSP's counterclaim. Also on March 28, 2007, ICSP filed a motion for summary judgment on the issue of its interest in the arbitration award.[6]

_____

[5] On March 13, 2006, NESC deposited interpleader funds in the amount of $209,412.39, representing the full amount of the arbitration award, into the Registry of the Court.

[6] ICSP's motion for summary judgment affects three separate pleadings — Count II of NESC's complaint in interpleader, Count I of ICSP's counterclaim against NESC, and Count I of ICSP's crossclaim against MB.

Further, the Court notes that as originally pled, NESC's complaint referred to SPIRCO as "Defendant SPIRCO Services." [Compl., ¶4 (emphasis added)]. SPIRCO was not named in the caption, nor was service obtained on SPIRCO. NESC was later granted leave to correct by interlineation its complaint to remove the word "Defendant." However, before it did

- 4 -

## II. MB'S MOTION FOR AN ORDER DIRECTING THE CLERK

## TO PAY ATTORNEY FEES TO ITS COUNSEL

As an initial matter, the Court will rule on MB's motion for an order directing the Clerk to pay attorney's fees to its counsel. MB claims that it entered into an attorney-client contract with the law firm of Stone, Leyton & Gershman, wherein Stone, Leyton & Gershman agreed to represent MB in its claim against NESC in exchange for a fee in the amount of 40% of all monies recovered therein. Further, MB argues that there are two parties that now claim the proceeds to the arbitration award — MB and ICSP — and that (1) if the Court finds MB is entitled to the award, Stone, Leyton & Gershman would be entitled to collect pursuant to its agreement with MB; or, in the alternative (2) if the Court finds that ICSP is entitled to the award, Stone, Leyton & Gershman's claim would be superior to ICSP's claim pursuant to a Missouri attorney's fees lien on the arbitration proceeds, or pursuant to the common fund doctrine.

ICSP opposes the motion, and argues that its claim is superior to MB's (and consequently Stone, Leyton & Gershman's) claim; that Stone, Leyton & Gershman, employed under a contingency agreement, are not entitled to <u>any</u> money until a judgment has been

---

so, ICSP brought its crossclaim against, among others, SPIRCO. [Doc. 17-1, p. 1]. Nonetheless, the Court lacks jurisdiction over SPIRCO because there is no record that service was ever obtained on SPIRCO, and accordingly the Court will not grant relief against SPIRCO. However, the Court also notes that, under Missouri law, "[a]n assignment is a volitional act of assignor and assignee. It divests the assignor of all interest in the thing assigned, and vests the same in the assignee." <u>Farmers Ins. Co., Inc. v. Effertz</u>, 795 S.W.2d 424, 426 (Mo.App. 1990) (citations omitted).

rendered and the judgments collected; and that, pursuant to the Federal Rules of Civil Procedure and this Court's local rules, it is premature for the Court to award attorney's fees until after the entry of a judgment.

The Court agrees that, pursuant to E.D.Mo. L.R. 8.02, awards of attorney's fees are typically determined by the Court on post-judgment motions, see Pirooz v. MEMC Elec. Materials, Inc., 2006 WL 568571, at *8 (E.D. Mo. Mar. 7, 2006), and that it is premature to determine what amount, if any, Stone, Leyton & Gershman is entitled. Accordingly, MB's motion will be denied without prejudice, and MB is free to reassert its motion after judgment has been entered.[7]

### III. DISPOSITIVE STANDARD OF REVIEW

### A. Rule 12(c) — Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure permits any party to move for judgment on the pleadings any time "[a]fter the pleadings are closed . . . ." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is appropriate in situations "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Syverson v. FirePond, Inc., 383 F.3d 745, 749 (8th Cir. 2004) (citing Faibish v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002)). In

---

[7]MB, in its brief in opposition to NESC's motion for judgment on the pleadings, further argues that it is entitled to attorney's fees because NESC acted in bad faith, vexatiously, wantonly, or for oppressive reasons when it filed the current action. Below, the Court finds that NESC acted properly in filing this interpleader action, and will accordingly not grant an award of attorney's fees against NESC for doing so.

considering a motion for judgment on the pleadings, the Court must "accept as true all facts pled by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001). Generally, the Court must ignore materials that are outside of the pleadings; however, the Court may consider some materials that are part of the public record or those that are necessarily embraced by the pleadings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 299 (1990) (opining that a trial court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

## B. Rule 56 — Summary Judgment

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp.,

- 7 -

340 F.3d 510, 516 (8th Cir. 2003) (quoting <u>Rose-Maston v. NME</u> <u>Hosps., Inc.</u>, 133 F.3d 1104, 1107 (8th Cir. 1998)).

## III. DISCUSSION

## A. Plaintiff's Motion for Judgment on the Pleadings

In Count I of its complaint, NESC requests "a Judgment and Order from this Court confirming the arbitration award as full and final judgment of any claims against it by SPIRCO as assigned to Midwest BankCentre and MB, and any such other and further relief as the Court deems just and proper under the circumstances."

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. As a general principle, the Supreme Court has stated that "passage of the [FAA] was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and [the Court] must not overlook this principal objective when construing the statute . . . ." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 220 (1985). Further, it has been noted by the Eighth Circuit Court of Appeals that "[t]he FAA compels courts to be solicitous of both the arbitration process and its results. The statute requires judicial confirmation of an arbitration award unless it was 'procured by corruption, fraud, or undue means,' where there was 'evident partiality or corruption in the arbitrators,' where the arbitrators were guilty of misconduct or where the arbitrators exceeded their authority." <u>Hoffman v. Cargill Inc.</u>, 236 F.3d 458, 461 (8th Cir. 2001) (quoting 9 U.S.C. § 10(a)). The FAA states in relevant part as follows:

> If the parties in their agreement have agreed
> that a judgment of the court shall be entered
> upon the award made pursuant to the arbitration,
> and shall specify the court, then at any time
> within one year after the award is made any party
> to the arbitration may apply to the court so
> specified for an order confirming the award, and
> thereupon the court must grant such an order
> unless the award is vacated, modified, or
> corrected as prescribed in sections 10 and 11 of
> this title. If no court is specified in the
> agreement of the parties, then such application
> may be made to the United States court in and for
> the district within which such award was made.

9 U.S.C. § 9.

The Court finds that all of the elements required for this Court's confirmation of the arbitration award are met. First, it is clear that NESC and SPIRCO agreed to arbitrate any and all controversies or claims arising out of the agreement between NESC and SPIRCO. Further, the arbitration award generally states that the "[a]ward is in full settlement of all claims and counterclaims submitted to this Arbitration." [Compl., Ex. B (emphasis added)]. As averred by NESC in its complaint, and admitted to by MB in its answer, "MB and NESC participated in an arbitration proceeding for the entire SPIRCO Claim[8] of $618,979.18. . . . The arbitration concluded with an award on December 22, 2005 in MB's favor and in the amount of $209,412.39. . . ." [Id., ¶¶17-18; MB Answer, ¶¶17-18 (emphasis added)]. Accordingly, the Court finds that the pleadings are sufficient to establish the scope of those claims submitted to arbitration.

_____

[8] "SPIRCO Claim" is defined by NESC, and admitted to by MB, as "a claim against the Project Bond in the amount of $512,794.61 (later amended to at least $618,979.18) to [ICSP] for work performed by SPIRCO for which NESC allegedly failed to pay." [Compl., ¶11; MB Answer, ¶11].

Second, NESC's application to the Court for confirmation was timely filed, as the complaint was submitted only two months after the arbitrator rendered her award. Third, this Court is an appropriate one, as it sits in the district within which the award was made. Finally, the arbitration award is final, as it has not been vacated, modified, or corrected, nor have there been any motions to vacate, modify or correct the award. See <u>Domino Group, Inc. v. Charlie Parker Memorial Found.</u>, 985 F.2d 417, 419-20 (8th Cir. 1993) (finding that a party's failure to file a motion to vacate, modify, or correct within three months of an arbitration award waives any defenses to confirmation it might otherwise have had); <u>see also</u> <u>Hart v. Metzger</u>, 834 S.W.2d 236, 238 (Mo.App. 1992) ("Upon application of a party, the court shall confirm an [arbitration] award, unless within the time limits hereinafter imposed [90 days] grounds are urged for vacating or modifying or correcting the award. . . . We have previously held that in the absence of such motions, confirmation under the [Uniform Arbitration Act] is mandatory.").

Upon consideration, the Court will grant the relief requested in Count I; will confirm the arbitration award; and will find that NESC, by depositing the full amount of the arbitration award with the Registry of the Court, has effected a full settlement of all claims submitted to arbitration, i.e., the entire SPIRCO Claim as assigned to MB. Further, the Court finds that this determination necessarily embraces the conclusion that MB may not pursue any portion of the SPIRCO Claim denied in arbitration with

NESC against ICSP, because — as surety — ICSP's liability is co-extensive with that of its principal, NESC. <u>See</u> <u>Sheffield Assembly of God Church, Inc. v. Am. Ins. Co.</u>, 870 S.W.2d 926, 932 (Mo.App. 1994) ("Under Missouri law, a surety's liability for contract damages is co-extensive with the liability of its principal."). In other words, since NESC's liability with regard to the entire SPIRCO Claim has been fully adjudicated and completely determined (with this Court's affirmation of the arbitration award and the payment of that award into the Registry of the Court), MB is precluded from re-asserting the SPIRCO Claim against NESC's surety, ICSP.

In Count II of its complaint, filed in interpleader, NESC asks that the Court issue an order

> (1) decreeing the party who is entitled to receive the $209,412.39; (2) ordering payment of the $209,412.39 to such party, which will fully and finally satisfy the arbitration award and all of NESC's legal obligation, if any, to SPIRCO, [Midwest BankCentre], MB and [ICSP] relative to the Project; (3) decreeing that MB has no further rights to pursue any claim on the Project bond for any portion of the SPIRCO Claim denied in the arbitration, including but not limited to, pre-award, prejudgment, post-award or post-judgment interest; (4) decreeing that NESC is not obligated to pay SPIRCO, MB, [Midwest BankCentre], or [ICSP] post-award interest or attorneys fees associated with collection of the award; [and] (5) awarding NESC for its reasonable attorneys fees in support of this action.

[<u>Compl.</u>, pp. 7-8]. In its motion, however, NESC specifically reserves its request for attorney fees to follow the entry of this Court's judgment on Counts I and II. Further, in its reply memorandum, NESC maintains that with its motion for judgment on the

pleadings, it does not seek a determination of the rights to the disputed funds. Thus, the remaining issues for the Court with regard to NESC's motion for judgment on the pleadings are: (1) whether NESC has a right to maintain an interpleader action; (2) whether MB and ICSP are entitled to post-award, pre-judgment interest on the arbitration proceeds; and (3) whether MB and ICSP are entitled to costs and attorney's fees incurred in connection with their respective attempts to collect the arbitration award.

In its memorandum in support of its motion for judgment on the pleadings, NESC asserts that its interpleader action flows from the result mandated by the confirmation of the arbitration award. NESC argues that interpleader is appropriate here, as NESC had in its possession more than $500.00; the money was claimed by two adverse claimants of diverse citizenship, i.e., MB and ICSP; and NESC deposited the money into the Registry of the Court, thereby agreeing to abide by the judgment of the Court. Upon consideration, the Court finds that NESC has established all the elements required to sustain an interpleader action.[9]

In their respective responses to NESC's motion for judgment on the pleadings, both MB and ICSP maintain they are

_____

[9]See 28 U.S.C. § 1335 ("The district courts shall have original jurisdiction of any civil action of interpleader . . . filed by any person, firm, or corporation, . . . having in his or its custody or possession money or property of the value of $500 or more, . . . if (1) [t]wo or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property . . . ; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court . . . .").

entitled to post-award, pre-judgment interest on the arbitration award. Under the FAA, an arbitration award that has not been modified or vacated is conclusive as to the rights of the parties. Therefore, a district court's judgment "should reflect what would have happened had the parties immediately complied with the award instead of going to court," Americas Ins. Co. v. Seagull Compania Naviera, 774 F.2d 64, 67 (2d Cir. 1985) (citing Marion Mfg. Co. v. Long, 588 F.2d 538, 542 (6th Cir. 1978)), and a court should ordinarily calculate and award post-award, prejudgment interest according to the arbitration forum's rules.

Nevertheless, this is not the typical case for confirmation of an arbitration award, where the party victorious at the arbitration initiates the suit to collect the arbitration proceeds. Rather, this is an interpleader action initiated by the party that lost at arbitration. "Interpleader is an equitable action controlled by equitable principles." Great American Ins. Co. v. Bank of Bellevue, 366 F.2d 289, 293 (8th Cir. 1966); see also Bauer v. Uniroyal Tire Co., 630 F.2d 1287, 1290 (8th Cir. 1980) (further stating that, in federal diversity actions, "whether prejudgment interest is allowable . . . is determined by referring to the law of the state in which the cause of action arose"). Therefore, the Court will look to Missouri law to determine whether prejudgment interest should be awarded.

Under Missouri law, in equitable actions "the determination of whether to award prejudgment interest is left to the discretion of the trial court." 21 West, Inc. v. Meadowgreen

Trails, Inc., 913 S.W.2d 858, 872 (Mo.App. 1995) (citations omitted); see also Ins. Co. of N. Am. v. Skyway Aviation, Inc., 828 S.W.2d 888, 892 (Mo.App. 1992) ("We conclude that, in interpleader actions, prejudgment interest need not be automatically allowed, but that its award should depend upon equitable considerations. . . . Equitable considerations relevant to the award of prejudgment interest in an interpleader action include: whether the stakeholder used the fund for his benefit and would be unjustly enriched at the expense of the claimants; and whether the stakeholder unreasonably delayed in instituting the action or depositing the fund with the court.").

In this case, the Court finds that consideration of the relevant factors favors the denial of post-award, pre-judgment interest on the arbitration award. Specifically, the Court finds the stakeholder, NESC, did not unreasonably delay in instituting the interpleader action. Rather, as stated above, NESC filed its complaint two months after the arbitrator rendered her decision, and deposited the disputed funds with the Court shortly thereafter. Further, given the short time frame involved, the Court finds NESC was not unjustly enriched at the expense of MB or ICSP. NESC's motion for judgment on the pleadings with respect to MB's and ICSP's request for post-award, pre-judgment interest will therefore be granted, as the Court determines as a matter of law that no such award of interest should be made.

Finally, Count II seeks a determination that NESC is not liable to MB or ICSP for attorney's fees, and that NESC should be

granted attorney's fees for filing this action.  As stated above, the Court will consider motions for attorney's fees after judgment has been entered in this case.  Accordingly, those portions of NESC's motion for judgment on the pleadings that request findings with regard to attorney's fees will be denied without prejudice.[10]

## B. Plaintiff's Motion for Summary Judgment

NESC has filed a motion for summary judgment with regard to ICSP's counterclaim, arguing that ICSP's entire counterclaim should be dismissed.  In Count I of its counterclaim, ICSP requests that the Court declare its interest in the arbitration award to be superior to that of all other claimants, and order that the sum of $209,412.39 plus interest be paid over to ICSP as an off-set against the amount owed by SPIRCO to ICSP.  For the reasons stated in section C below, the Court finds against ICSP with regard to its claim to the arbitration proceeds, and NESC's motion for summary judgment on Count I of ICSP's counterclaim will therefore be granted.

Further, ICSP asserts counterclaims against NESC for indemnification (Count II), and for exoneration and quia timet relief (Count III).  Upon review, the Court finds that the relief requested in both Counts II and III concerns ICSP's possible

---

[10]As stated above, NESC's motion for judgment on the pleadings specifically reserves its request for attorney fees to follow the entry of judgment. [See also NESC's Motion for Judgment on the Pleadings, Doc. #39-1, ¶13].  Although in the typical interpleader action an uninterested stakeholder's request for the costs associated with bringing the action is considered before judgment is entered, because in this case NESC remains a party to the action, the Court will consider NESC's request for attorney fees after judgment is entered.

continued liability under the Project Bond for the balance of the SPIRCO Claim. However, NESC has already deposited interpleader funds in the amount of $209,412.39 — the full amount of the arbitration award — into the Registry of the Court. The Court has already found that payment of such an award constitutes a full settlement of all claims submitted to arbitration vis-a-vis NESC and that, as NESC's surety, ICSP's liability on the SPIRCO Claim under the Project Bond is necessarily extinguished. [See supra pp. 10-11]. Accordingly, since there is no remaining ICSP liability for that claim under the Project Bond, NESC's motion for summary judgment on Counts II and III of ICSP's counterclaim will be granted.

## C. Defendant ICSP's Motion for Summary Judgment

ICSP has filed a motion for summary judgment, seeking a judgment in its favor on Count II of NESC's complaint in interpleader, Count I of ICSP's counterclaim against NESC, and Count I of ICSP's crossclaim against MB. Essentially, ICSP asks that this Court find that ICSP is entitled to the monies awarded in the arbitration between MB and NESC. ICSP advances two arguments to support its motion for summary judgment: (1) that ICSP has a right of set-off against SPIRCO; and (2) that regardless of the validity of the assignments, ICSP has equitable rights to the interpled funds superior to those of either MB or SPIRCO.

ICSP argues that it has a right to the interpled funds as a set-off of its claim against SPIRCO on the American Cyanamid bond.

> The doctrine of setoff . . . is essentially an
> equitable one requiring that the demands of
> mutually indebted parties be set off against each
> other and that only the balance be recovered in
> a judicial proceeding by one party against the
> other. Stated otherwise, the right of setoff
> allows entities that owe each other money to
> apply their mutual debts against each other,
> thereby avoiding the absurdity of making A pay B
> when B owes A.

20 Am. Jur. 2d <u>Counterclaim, Recoupment, and Setoff</u>, § 6 (footnotes omitted). "It is hornbook law that to be considered mutual, debts must be in the same right and between the same parties, standing in the same capacity." <u>In re Bay State York Co., Inc.</u>, 140 B.R. 608, 613 (Bankr. D. Mass. 1992) (internal quotations and citations omitted); <u>see also</u> <u>Greenwood v. Bank of Illmo</u>, 782 S.W.2d 783, 786 (Mo.App. 1989). "[T]he mutuality requirement is strictly construed against the claimant . . . ." <u>In re Bay State York Co., Inc.</u>, 140 B.R. at 614 (citations omitted). When set-off is at issue in a case, it becomes incumbent on a court to determine that "(1) the debts are in the same right, (2) the debts are between the same parties, and (3) the parties are standing in the same capacity." <u>Id.</u>

Upon consideration, the Court finds ICSP is not entitled to a set-off with respect to the interpled funds, because it fails to establish the debts at issue are between the same parties. ICSP's claim is based on a debt in the amount of $794,964.38 plus interest, running from SPIRCO to ICSP as a result of Magistrate Judge Noce's rulings in <u>Spirtas Company et al. v. Insurance Company of the State of Pennsylvania</u>. [<u>See</u> <u>supra</u> note 4]. The set-off is

claimed against the debt in the amount of $209,412.39, running from NESC to MB as a result of the arbitration proceeding between those two parties.

In arguing its motion for summary judgment, ICSP attempts to establish the required mutuality by asserting the arbitration award actually runs to SPIRCO, averring that the assignments to Midwest BankCentre and MB were invalid. Further, ICSP asserts that even assuming the validity of both SPIRCO's assignment of its claim on the Project Bond to Midwest BankCentre, and then Midwest BankCentre's subsequent assignment to MB, those assignments are not a bar to the enforcement of ICSP's equitable right to set-off against the original assignee. In other words, ICSP claims that because it was entitled to a set-off against SPIRCO, it is entitled to a set-off against SPIRCO's assignee, MB, as well.

Upon consideration, however, the Court finds ICSP fails to demonstrate the requisite mutuality even with respect to SPIRCO,[11] as ICSP does not owe a debt to SPIRCO. Rather, the arbitration award obliges NESC to pay, and was satisfied when NESC deposited the entire sum with the Court. Thus, because ICSP currently owes no debt to any of the other parties involved in this matter, and, as the Court finds above, has no remaining liability to MB for the SPIRCO Claim, it cannot establish the mutuality necessary for a set-off. ICSP's motion for summary judgment on the basis of set-off must therefore be denied.

---

[11]Because the Court finds that ICSP fails to demonstrate mutuality of debt as to the original claimant, SPIRCO, it need not at this time decide the validity of the assignments.

As the Court construes ICSP's second argument in favor of summary judgment, ICSP maintains it is entitled to the disputed funds because it has a claim thereto superior to that of MB, Midwest BankCentre, and SPIRCO. Specifically, ICSP asserts that as NESC's surety, it has an equitable right to the contract funds, dating back to the issuance of the bond itself. "Once ICSP's equitable rights to the bonded contract funds in this case were set in motion by SPIRCO's claim on the NESC bond, such rights became effective and superior as to any other purported assignee (including those with a perfected security interest)." [Doc. #58-2, p. 14].[12]

Before a surety is entitled to a right of subrogation, it must actually pay out money on the surety bond, or at the very least, be subject to paying out such money. See, e.g., First State Bank v. Reorganized Sch. Dist. R-3, Bunker, 495 S.W.2d 471, 481 (Mo.App. 1973) ("[A]ll that is necessary for the surety's lien to attach and for the surety to prevail is that the contractor be in default as a matter of fact, and that as a result of such default the surety become obligated to pay under its payment bond . . . . Thereupon, the surety's right of subrogation relates back to the date of the execution of the bond. . . ."); id. at 482 ("[T]he surety's subrogative right remains potential until the contractor is actually in default and the surety becomes obligated to pay and does pay the obligations of its principal . . . ."); Capitol

_____

[12]ICSP further states that "[t]o better understand these equitable principals, it is . . . important to understand the surety's rights of equitable subrogation." [Doc. #58-2, p. 14].

<u>Indem. Corp. v. Citizens Nat'l Bank of Fort Scott</u>, 8 S.W.3d 893, 900 (Mo.App. 2000) ("[W]hen a contractor becomes 'in default as a matter of fact,' and the surety becomes obligated to pay under the terms of its bond, [] 'the surety's right of subrogation relates back to the date of the execution of the bond.' However, this right extends only as to amounts which are unpaid.").

In section A above, this Court finds that NESC has already deposited with the Court interpleader funds constituting the full amount of the arbitration award, which eliminates any potential liability for NESC, and ICSP, to MB on the SPIRCO Claim. ICSP has not sufficiently pled that it has suffered liability (or will potentially suffer liability) pursuant to the Project Bond. Consequently, ICSP currently has no equitable rights under the theory of subrogation. Accordingly,

**IT IS HEREBY ORDERED** that defendant MB Associates' motion for an order directing the clerk to pay attorney fees to its counsel [Doc. #30] is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff National Environmental Services Corporation's motion for judgment on the pleadings [Doc. #39] is **GRANTED IN PART AND DENIED IN PART** as follows: (1) NESC's motion for judgment on the pleadings with respect to Count I of the complaint for confirmation of the arbitration award as full and final judgment of all claims submitted to arbitration against NESC is **GRANTED**; (2) NESC's motion for judgment on the pleadings with respect to its request for approval of the interpleading action is **GRANTED**; (3) NESC's

motion for judgment on the pleadings with respect to its request for denial of post-award, pre-judgment interest is **GRANTED**; and (4) the remainder of NESC's motion for judgment on the pleadings is **DENIED** without prejudice.

        **IT IS FURTHER ORDERED** that plaintiff National Environmental Services Corporation's motion for summary judgment [Doc. #56] as to defendant Insurance Company of the State of Pennsylvania's counterclaim against plaintiff NESC is **GRANTED**, and all counts of defendant ICSP's counterclaim [Doc. #16] are **DISMISSED** without prejudice.

        **IT IS FURTHER ORDERED** that defendant Insurance Company of the State of Pennsylvania's motion for summary judgment [Doc. #58] is **DENIED**.


Dated this _17th_ day of _September_, 2007.

                    /s/Donald J. Stohr
                    UNITED STATES DISTRICT JUDGE